Hamlet J. Barry, III Director Mined Land Reclamation Division 1313 Sherman Street, 4th Floor Denver, CO 80203
Dear Mr. Barry:
You requested my opinion regarding the authority and jurisdiction of the Mined Land Reclamation Division over coal load out facilities not located at the mine site.
QUESTION PRESENTED AND CONCLUSION
What is the extent of the Mined Land Reclamation Division's (MLR) authority under the Colorado Surface Coal Mining Reclamation Act (hereinafter "the Act") to require permits of coal processing, preparation or loading facilities not at a mine site?
 My conclusion is that the jurisdiction of MLR extends to such facilities conducting activities "in connection with" a mine from which they receive coal. C.R.S. 1973, 34-33-103(26)(a) (Cum. Supp. 1979). Since the MLR Board, by regulation, has authority pursuant to C.R.S. 1973, 34-33-108 (Cum. Supp. 1979) to apply the "in connection with" limitation in a manner which it believes most consistent with the accomplishment of the purposes of the Act, it is recommended that the board adopt regulations incorporating specific factors to be weighed in each case to determine whether a facility is being operated "in connection with" a mine.
ANALYSIS
Pursuant to a program to be approved by the Secretary of Interior, MLR will have the authority to require all persons conducting "surface coal mining and reclamation operations" (hereinafter "surface mining operations") in Colorado to obtain a permit. C.R.S. 1973, 34-33-109 (Cum. Supp. 1979). MLR's authority to require permits for off-site coal processing, preparation, or loading facilities (hereinafter "off-site facilities") thus depends upon whether such facilities come within the following definition of surface mining operations:
 (a) Activities conducted on the surface of lands in connection with a surface coal mine or activities . . . which involve surface operations and surface impacts incident to an underground coal mine. Such activities include . . . the cleaning, concentrating, or other processing or preparation and loading of coal for interstate commerce at or near the mine site. . .
C.R.S. 1973, 34-33-103(26)(a) (Cum. Supp. 1979). (Emphasis added.)
Since the Surface Mining Control and Reclamation Act of 1977 (SMCRA), 30 U.S.C. § 1201 et seq., being administered by the federal Office of Surface Mining (OSM), defines surface mining operations in terms substantially identical to that in the Colorado Act, 30 U.S.C. § 1291 (28), administrative and judicial decisions on OSM's jurisdiction over off-site facilities provide a valuable aid in construing the Act.
The Interior Board of Surface Mining Appeals has stated that the phrase "in connection with" is a "basic parameter" in determining which types of activities comprise "surface coal mining activities."[1] Western Engineering,Inc., 1 IBSMA 202, 210 (1979). Furthermore, in determining whether an off-site facility has a sufficient "connection with" a mine to assert jurisdiction, the circumstances of each case must be examined. Ross Tipple Co., 1 IBSMA 303, 304 (1979). Examples of these circumstances include: the connection of a facility to a mine by a private road,Drummond Coal Co., Dept. of Interior OHA Docket No. NX9-83-R (Nov. 7, 1979); the fact that over 50 percent of the coal processed by a facility comes from mines in which the facility's owners had significant financial interests,Roberts Brothers Coal Co., Dept. of Interior OHA Docket Nos. NX9-20-R and NX9-34-P (Nov. 24, 1979); and the fact that an adjacent mine is supplying a tipple even if the tipple is processing coal from other sources. Shawnee Coal Co. v.Andrus, No. C-2-79-1170, 12 (D. Ohio Dec. 31, 1979) (order granting preliminary injunction).
This last consideration finds explicit support in the definition of surface mining operations which provides that off-site facilities "at or near the mine site" are, in every case, considered to be "in connection with" a mine. However, apart from an "adjacent" facility which is clearly "near the mine site," there are few other guidelines for determining which facilities fall into this category. OSM's position is that, with regard to loading facilities, the phrase encompasses "most if not all loading facilities where the first loading for truck, rail or conveyor belt occurs," but does not include intermediate loading facilities, such as the Baltimore port where coal is loaded for international commerce. 44 Fed. Reg. 14,940 (1979). InGreater Kanawha Industries, Dept. of Interior OHA Docket No. CH 9-23-P (1979), an administrative law judge held, without explanation, that a crusher and belt line ten miles from the nearest mine were "not at or near the mine site" and were, therefore, not subject to the requirements of SMCRA. There were no other relationships between the facility and a mine upon which to base a finding of "in connection with." Even a preparation plant 1.3 miles from the nearest supplying mine has been held to be not "at or near the mine site." Virginia Iron, Coal andCoke Co., Dept. of Interior OHA Docket Nos. CH 9-18-R and CH 9-25-R (February 15, 1980). While a holding of jurisdiction could have been based on the finding of the operator's leasing of mineral interests to suppliers of the facility, that "connection" was mitigated by the findings that public roads connected the supplying mines to the facility and that the facility was not necessary to the operation of the mines.
Nonetheless, it appears that distance alone will not always be determinative of whether an off-site facility is "near the mine site." In Western Engineering, Inc., 1 IBSMA at 211, OSM argued that because the operators of mines voluntarily chose to send their coal to Western's facility rather than somewhere else, ipso facto Western's activities were "at or near the mine." The board found OSM's position "not supported by the interim regulations," id., implying that such a position may have statutory authority and be upheld if explicitly incorporated into regulations. The board held that OSM did not have jurisdiction over a facility for the preparation and loading of coal for river barge shipments which was located 10 to 12 miles from the nearest supplying mine and whose owners did not own or lease any coal mines. The rationale was that neither the legislative history of SMCRA nor the federal regulations provided conclusive guidance as to the "connection" with a coal mine which the Secretary of Interior intended as a condition for jurisdiction. Western Engineering, Inc., 1 IBSMA at 213.
On the basis of the above-cited cases and its own interpretation of the meaning of surface mining operations, OSM has determined that it has jurisdiction over the following off-site facilities:
 1. Any such facility adjacent to a mine which sends substantially all of its coal to that facility regardless of ownership differences between the mine and the facility;
 2. Any such facility which is connected to a mine site by a private road, belt line or other private way or conveyance, and which receives substantially all the coal from that mine; and
 3. Any facility which receives a major portion of its coal from one particular mine and is operated by the same legal entity that operates the mine or by a legal entity at least 50% of which is owned by the same person or persons owning the facilities.
Roberts Brothers Coal Co., Dept. of Interior OHA Docket Nos. NX9-20-R and 9-34-P (Nov. 14, 1979).
Guidelines incorporating similar circumstances are recommended below for adoption by the MLR Board.
SUMMARY
The MLR Board, through the exercise of its rulemaking authority, must, consistent with the purposes of the Act, determine which off-site facilities will be required to obtain permits and comply with the permanent performance standards. A reasonable approach, heretofore adopted by the Interior Board of Surface Mining Appeals (IBSMA), is that a finding of jurisdiction depends upon the factual circumstances of each case. Branhamand Baker Coal Co., 2 IBSMA 1, 1 (1980) and RossTipple Co., 1 IBSMA 303, 304 (1979).
Following the approach of the IBSMA, a list of pertinent circumstances should be developed by MLR to be weighed in each case to determine if an off-site facility has a sufficient "connection with" a mine such that MLR may assert jurisdiction. Based on the cases and OSM's guidelines, the factors to be weighed in each case may include:
 1. the physical proximity of a supplying mine to the facility, with adjacency or a determination that the facility is near the mine being sufficient alone to assert jurisdiction;
 2. the portion of the mine's coal production delivered to the facility, with a relatively large portion meaning a strong "connection";
 3. whether the mine is connected by a private or public road or conveyance, with a private "connection" weighing more heavily in favor of jurisdiction;
 4. the extent to which the facility is operated by the same person or persons owning the mine, with 100 percent common ownership generally sufficient alone to assert jurisdiction;
 5. the portion of the facility's coal which is received from a single mine, with a relatively large portion meaning a strong "connection"; and
 6. the extent to which the mine's operations are dependent upon the continued existence of the facility.
These guidelines are consistent with the accomplishment of the purposes of the Act, and it is recommended that the MLR Board consider them for adoption pursuant to its rulemaking authority.
Very truly yours,
 J.D. MacFARLANE Attorney General
MINES AND MINING COAL ENERGY
C.R.S. 1973, 34-33-101 et seq. C.R.S. 1973, 34-33-103(26)(a) (Cum. Supp. 1979)
NATURAL RESOURCES Open Mining Land Reclam. Bd.
MLR Division has jurisdiction over coal mining-related facilities, not at the mine site which are strongly connected to the mine by physical proximity, ownership, roadways, and similar factors.
[1] There is no discussion in the cases or in OSM's guidelines of any distinction between the "connection" required for off-site activities and surface mines and the "connection" required for off-site activities and underground mines. Surface activities related to underground mines are within the definition of surface mining operations if they are "incident to an underground coal mine." C.R.S. 1973, 34-33-109(a) (Cum. Supp. 1979). The phrases "incident to" and "in connection with" appear to serve synonymous functions and should be attributed the same meaning.